1
2
3
4           **UNITED STATES DISTRICT COURT**
5           **NORTHERN DISTRICT OF CALIFORNIA**
6                     **SAN JOSE DIVISION**
7

8  UNITED STATES OF AMERICA,              Case No.  19-cr-00046-BLF-1
9           Plaintiff,
                                          **ORDER DENYING MOTION FOR**
10     v.                                 **JUDGMENT OF ACQUITTAL; AND**
                                          **DENYING MOTION FOR NEW TRIAL**
11 YVONNE LATTIMORE,
12         Defendant.                     [Re:  ECF 250, 259]
13
14
15
16

17         On May 15, 2023, a jury convicted Defendant Yvonne Lattimore of three counts of wire

18 fraud, three counts of mail fraud, and two counts of supplemental security income fraud.  *See*

19 Criminal Minutes, ECF 246; Verdict Form, ECF 247.  Ms. Lattimore has filed a motion for

20 judgment of acquittal under Federal Rule of Civil Procedure 29 and an alternative motion for new

21 trial under Federal Rule of Civil Procedure 33.  *See* Mot. for Judgment of Acquittal, ECF 250;

22 Mot. for New Trial, ECF 259.  The Government opposes the motions.  *See* Gov't's Opps., ECF

23 254, 263.

24         The motions were heard on September 5, 2023, in conjunction with Ms. Lattimore's

25 sentencing hearing.  The Court orally denied both motions on the record before proceeding to

26 sentencing, and advised the parties that a written order on the motions would follow.

27         For the reasons discussed below, Ms. Lattimore's motion for judgment of acquittal and

28 alternative motion for new trial are DENIED.

## I.    BACKGROUND[1]

*Charges*

Ms. Lattimore was charged by Amended Indictment with three counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 1-3), three counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts 4-6), and two counts of supplemental security income fraud in violation of 42 U.S.C. § 1383a(a)(2) (Counts 7-8).  *See* Am'd Indictment, ECF 210.  All the counts stem from Ms. Lattimore's alleged scheme to defraud the Social Security Administration ("SSA") and the State of California by obtaining need-based benefits through false representations.  *See id.*

Ms. Lattimore began receiving Supplemental Security Income ("SSI") benefits in 2008.  *See* Am'd Indictment ¶ 7.  SSI is a federal cash assistance program, administered by the SSA, for aged, blind, or disabled individuals who have limited income and resources.  *See id.* ¶¶ 1, 3.  Individuals who receive SSI automatically qualify for Medi-Cal, and based on Medi-Cal eligibility may qualify for benefits through California's In-Home Supportive Services ("IHSS") program.  *See id.* ¶¶ 4-5.  Ms. Lattimore began receiving IHSS benefits in 2010.  *See id.* ¶ 8.  The IHSS program allows recipients to hire care providers to help with personal care, transportation, and related services.  *See id.* ¶ 6.  The care provider completes timesheets that the IHSS recipient signs, dates, and mails to the IHSS payroll center.  *See id.*  The State of California pays the care provider directly.  *See id.*

The Amended Indictment alleges the following conduct:  beginning no later than May 2012, Ms. Lattimore devised a fraudulent scheme to obtain SSI and IHSS benefits to which she was not entitled.  *See* Am'd Indictment ¶¶ 10-20.  Ms. Lattimore hired Person 1 as an IHSS care provider but arranged for Person 1's paychecks to be deposited into her own bank account and used those funds for her own personal use.  *See id.* ¶¶ 11-12.  Ms. Lattimore never reported that bank account or the IHSS deposits to the SSA.  *See id.* ¶¶ 15-16.  Ms. Lattimore also never

---

[1] The Background section provides an overview of the charges against Ms. Lattimore and the theories and evidence presented at trial.  The specific evidence relevant to each motion is addressed in detail in the Discussion section under each motion's subheading.

reported her true rent amount, which exceeded $1,000 per month, to the SSA.  *See id.* ¶ 17.  The Amended Indictment alleged that had Ms. Lattimore truthfully reported her income and living situation to the SSA, she would have lost her SSI benefits, and consequently would have lost her eligibility for Medi-Cal and IHSS services.  *See id.* ¶¶ 18-19.

Counts 1-3 charge Ms. Lattimore with wire fraud based on three electronic funds transfers that the SSA wired into her bank account in March 2017, May 2017, and June 2017.  *See* Am'd Indictment ¶¶ 21-24.  Those wire transfers, each in the amount of $895.72, were payments of SSI benefits.  *See id.*  Counts 4-6 charge Ms. Lattimore with mail fraud based on her mailing of Person 1's IHSS timesheets in May 2017, April 2017, and May 2017.  *See id.* ¶ 27.  As discussed below, Person 1 was Ms. Lattimore's sister, Pamela Henry.  Counts 7-8 charge Ms. Lattimore with SSI fraud based on representations she made regarding her income, resources, and rent during redetermination interviews with the SSA in January 2016 and December 2016.  *See id.* ¶¶ 28-31.

*Government's Trial Presentation*

Trial commenced on May 8, 2023.  *See* Criminal Minutes, ECF 238.  In presenting its case, the Government conceded that Ms. Lattimore has disabilities and some need for SSI and IHSS benefits.  The Government's theory was that at some point Ms. Lattimore's "need became greed," which led her to defraud the federal government and the State of California of thousands of dollars.  Trial Tr. 15:4-17.[2]

The Government presented ten witnesses and forty-five exhibits.  SSI supervisor Fe Nadine Fung, IHSS supervisor Sylvia Ballantyne, and SSI claims representative Rocio Gabriel testified about the requirements for obtaining benefits generally and about specific representations and omissions made by Ms. Lattimore.  Ms. Ballantyne also testified that she saw Ms. Lattimore at Wal-Mart acting in a manner that was inconsistent with her claimed disabilities.

---

[2] Volumes 1-3 of the trial transcript have been submitted by the Government as Exhibit A to the declaration of Kelsey C. Davidson, docketed at ECF 254-2.  Volume 3 of the trial transcript has been submitted by Ms. Lattimore as Exhibit A to the declaration of Leah Spero, docketed at ECF 259-1.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   The manager of Ms. Lattimore's apartment complex testified that she claimed a monthly

2   income of $10,000 on her rental application and paid monthly rent of at least $1,000.

3   Defendant's sister, Pamela Henry, was the designated in-home care provider for Ms.

4   Lattimore.  Ms. Henry's former employer testified that Ms. Henry worked for him full-time from

5   March 2016 through July 2017.  During that period, Ms. Henry also claimed that she was working

6   as Ms. Lattimore's IHSS care provider.  A state fraud investigator  named Cory Chevalier testified

7   that Ms. Henry would have had to work 15-22 hours per day to maintain a full-time job and also

8   provide the claimed care provider hours.  He stated that the IHSS payments for the claimed hours

9   were deposited into Ms. Lattimore's bank account.  Mr. Chevalier also testified that Ms. Lattimore

10   had prior state court criminal convictions for welfare fraud and perjury.

11   Three individuals testified that certain medical records Ms. Lattimore submitted to IHSS to

12   support her requested care provider hours were not authentic.  Finally, a federal fraud investigator,

13   Special Agent Rena Lopez, testified that direct deposits of SSI payments into Ms. Lattimore's

14   bank account originated across state lines in Baltimore, Maryland.

15   In its closing argument, the Government emphasized that the case was not about whether

16   Ms. Lattimore has disabilities – the Government conceded that she does – but was about Ms.

17   Lattimore's scheme to obtain benefits beyond those to which she was entitled.  The Government

18   argued that Ms. Lattimore's undisputed "need" had become "greed."  Trial Tr. 554:1-22.

19   *Ms. Lattimore's Trial Presentation*

20   Ms. Lattimore was represented by defense counsel Mike Hinckley through the close of the

21   Government's case.  The defense theory was that Ms. Lattimore qualified for benefits under the

22   SSI and IHSS programs and that any reporting irregularities were due to the complicated

23   governmental bureaucracy she had to navigate.  Mr. Hinkley attempted to support that narrative

24   through cross-examination, questioning five of the Government's ten witnesses.  He elicited

25   testimony from Ms. Fung that the terminology used in the benefits redetermination process is

26   technical and can be confusing, questioned Ms. Ballantyne about proceedings in which Ms.

27   Lattimore obtained additional care provider hours and received retroactive payments, and clarified

28   with Ms. Gabriel that SSI payments can be increased if warranted.  Mr. Hinckley cross-examined

1   Mr. Chevalier briefly about the IHSS's use of the term "recipient" to mean the recipient of

2   services rather than funds.  Finally, in response to the Government's evidence that Ms. Lattimore

3   falsely claimed more medical appointments than she had, Mr. Hinckley questioned an employee of

4   Natividad Medical Center as to whether certain types of walk-in visits could be omitted from a

5   printout of appointments.

6        After the Government rested, Ms. Lattimore stated that she wished to relieve Mr. Hinckey

7   as her counsel and to proceed with the remainder of the trial pro se.  The Court conducted a

8   *Faretta*[3] colloquy with Ms. Lattimore and determined that Ms. Lattimore had made a knowing and

9   voluntary waiver of the right to counsel and an assertion of the right to represent herself.  Mr.

10  Hinckley was appointed as advisory defense counsel.

11       Ms. Lattimore, proceeding pro se, presented two witnesses:  her doctor, Justin Swan, and

12  her sister, Pamela Henry.  Dr. Swan testified that Ms. Lattimore suffered from numerous medical

13  conditions, including tendonitis of the hands and leg, trochanteric bursitis, carpal tunnel syndrome,

14  lumbar strain, cervical disc disease, and shoulder impingement.  He described the pain and

15  functional limitations that can result from those conditions, and the surgeries and other treatments

16  he provided to Ms. Lattimore.  Dr. Swan confirmed that he had signed and submitted physician

17  reports and range of motion forms to Monterey County.  Ms. Lattimore successfully moved some

18  of those documents into evidence.

19       Because of concerns that Ms. Henry's testimony in this case might implicate her Fifth

20  Amendment right against self-incrimination, the Court appointed attorney Peter Leeming to

21  represent her.  Mr. Leeming was present at trial and he advised Ms. Henry not to answer questions

22  about work she did as Ms. Lattimore's IHSS provider, IHSS timesheets bearing Ms. Henry's

23  signature, payments by IHSS, Ms. Henry's bank accounts, or Ms. Henry's transmission of

24  documents by mail or wire.  Ms. Henry personally asserted her Fifth Amendment right not to

25  testify with respect to those topics.  The Court directed Mr. Leeming to remain in the courtroom

26  during Ms. Henry's testimony and to object when necessary to protect her Fifth Amendment right.

27

28  [3] *Faretta v. California*, 422 U.S. 806 (1975).

United States District Court
Northern District of California

United States District Court
Northern District of California

Ms. Henry's assertion of the Fifth Amendment left few areas for questioning.  Ms. Lattimore's attempts to ask Ms. Henry about IHSS documents and administrative proceedings drew objections from Mr. Leeming, which were sustained by the Court.  The Court also sustained several hearsay objections by the Government when Ms. Lattimore asked Ms. Henry about statements made by others.  Ms. Henry testified without objection, or after an objection had been overruled, regarding Ms. Lattimore's inability to drive due to her medical conditions, Ms. Lattimore's encounter with Ms. Ballantyne at Wal-Mart, and Ms. Lattimore's need for assistance from Ms. Henry in typing a particular letter.  On cross-examination, the Government questioned Ms. Henry about her prior convictions for welfare fraud and perjury.

In her closing argument, Ms. Lattimore focused heavily on the issue of whether she has disabilities, arguing that her disabilities were established by Dr. Swan.  Ms. Lattimore also argued that the Government's witnesses had discrepancies in their testimony and were not credible.

*Jury Verdict*

The jury deliberated for approximately three hours before returning a verdict of guilty on all eight counts.

## II.    MOTION FOR JUDGMENT OF ACQUITTAL

### A.    Legal Standard

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).  "A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1).

The Court's review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979), in which the Supreme Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319.  "*Jackson* thus establishes a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence." *United States v.*

*Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010).  "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution."  *Id*. (citing *Jackson*, 443 U.S. at 319).  "Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow 'any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'"  *Id*. (quoting Jackson, 443 U.S. at 319).

"A defendant need not state specific grounds to support a Rule 29 motion."  *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010).  "[H]owever, when a Rule 29 motion is made on a specific ground, other grounds not raised are waived."  *Id*.

## B.    Discussion

Mr. Hinckley made a motion for judgment of acquittal on all counts at the close of the Government's case, which was denied by the Court without prejudice to renewal.  *See* Trial Tr. 355:14-359:17.  After the trial, Ms. Lattimore filed a pro se motion for judgment of acquittal on all counts.  *See* Mot. for Judgment of Acquittal, ECF 250.  The Government filed opposition to Ms. Lattimore's pro se motion.  *See* Gov't's Opp., ECF 254.  The Court subsequently appointed attorney Leah Spero to represent Ms. Lattimore post-trial, and granted Ms. Spero leave to supplement Ms. Lattimore's motion for judgment of acquittal when Ms. Spero filed a motion for new trial.  *See* Order Granting Leave, ECF 255.  Ms. Spero thereafter filed a motion for new trial combined with a supplemental brief supporting the motion for judgment of acquittal.  *See* Mot. for New Trial, ECF 59.  Ms. Spero expands on Ms. Lattimore's pro se motion only with respect to the wire fraud counts (Counts 1-3), and asserts that Ms. Lattimore's pro se motion is sufficient to preserve general objections to the sufficiency of the evidence on the remaining counts.  *See* Mot. for New Trial, ECF 59.  The Government filed opposition the motion for new trial and to the additional defense arguments on the sufficiency of the evidence to support the wire fraud convictions.  *See* Gov't's Opp., ECF 263.  Briefing on the motions was completed when Ms. Spero filed a reply on behalf of Ms. Lattimore.  *See* Reply, ECF 265.

### 1.    Wire Fraud (Counts 1-3)

Ms. Lattimore was charged with three counts of wire fraud based on direct deposits of SSI

payments in the amount of $895.72 into her Wells Fargo checking account on March 31, 2017, 5/1/2017, and 6/1/2017.  The jury was instructed that the Government had to prove four elements in order to establish Ms. Lattimore's guilt on each count of wire fraud under 18 U.S.C. § 1343: (1) "First, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.  Deceitful statements of half-truths may constitute false or fraudulent representations"; (2) "Second, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property"; (3) "Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat, meaning the intent to deprive someone of money or property by means of deception"; and (4) "Fourth, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme."  Jury Instr. 37, ECF 245.

On the first element, scheme to defraud, the Government presented evidence that: individuals are eligible for SSI only if they show that they have less than $2,000 in assets in a given month, *see* Trial Tr. 32:2-23 (Fung); Ms. Lattimore represented to the SSA that she had no income and paid only $600 per month in rent, *see id*. 43:20-49:8 (Fung); Ms. Lattimore disclosed two Wells Fargo bank accounts, a checking account that averaged a balance of about $5.00 at the end of each month, and a savings account that averaged a balance between $1.00 and $10.00 at the end of the month, *see id*. (Fung); and Ms. Lattimore told the SSA that she did not have any other resources, *see id*. (Fung).  The Government also presented evidence that the true state of affairs was that:  Ms. Lattimore caused IHSS paychecks totaling approximately $160,000, meant for Ms. Henry, to be deposited into Ms. Lattimore's own bank account at Bay Federal Credit Union between May 2012 and September 2018, *see id*. 258:3-269:17 (Chevalier); Ms. Lattimore used those funds to pay her rent, which was in excess of $1,000 per month, *see id*. (Chevalier); and Ms. Lattimore did not disclose her Bay Federal Credit Union account or the funds deposited in that account to the SSA, *see id*. 43:20-49:8 (Fung).  This evidence, viewed in the light most favorable to the Government, is adequate to allow a rational trier of fact to find that Ms. Lattimore

8

knowingly devised and participated in a scheme to defraud the SSA in order to obtain SSI benefits.

On the second element, materiality of the misrepresentations, the Government presented evidence that the SSA conducts periodic redeterminations regarding eligibility for SSI, and that the individual's reporting on income and resources is material to determining eligibility for benefits as well as the amount of benefits. *See* Trial Tr. 34:5-36:4 (Fung). This evidence, viewed in the light most favorable to the Government, is adequate to allow a rational trier of fact to find that Ms. Lattimore's misrepresentations regarding her income and monthly rent were material to the SSA's determination of her eligibility for SSI benefits and the amount of those benefits.

On the third element, intent to defraud, the Government's evidence discussed above established that Ms. Lattimore consistently represented that she had no income and no assets over a period of seven years, while concealing the existence of her Bay Federal Credit Union account and the IHSS payments she received in that account. The Government's evidence discussed above also established that Ms. Lattimore consistently represented that she paid only $600 per month in rent when actually she paid more than $1,000 per month in rent. In addition, the Government presented evidence that Ms. Lattimore had prior convictions for welfare fraud and perjury. *See* Trial Tr. 241:15-243:22 (Chevalier). Ms. Lattimore's prior convictions, admitted under Federal Rule of Evidence 404(b), give rise to a reasonable inference that Ms. Lattimore has prior experience with the requirements of welfare programs and understands the importance of providing accurate information in welfare proceedings. The totality of the evidence, viewed in the light most favorable to the Government, is adequate to allow a rational trier of fact to find that Ms. Lattimore acted with an intent to defraud the SSA when she misrepresented her income and monthly rent.

The fourth element, use of an interstate wire communication to carry out or attempt to carry out an essential part of the scheme, is the focus of the Rule 29 arguments presented by Ms. Lattimore's current counsel, Ms. Spero, in her written briefing and at the hearing. The jury was instructed as follows: "It need not have been reasonably foreseeable to the defendant that the wire communication would be interstate in nature. Rather, it must have been reasonably foreseeable to

United States District Court
Northern District of California

the defendant that some wire communication would occur in furtherance of the scheme, and an interstate wire communication must have actually occurred in furtherance of the scheme." Jury Instr. 37.  The Government presented evidence that Ms. Lattimore's monthly SSI benefits were paid by direct deposit into her Wells Fargo checking account.  *See* Trial Tr. 273:17-275:3 (Chevalier).  A jury reasonably could find based on this evidence that Ms. Lattimore knew the SSI payments would be wired into her bank account.  Special Agent Lopez testified that the SSI payments upon which Counts 1-3 are based were wired into Ms. Lattimore's Wells Fargo account from Baltimore, Maryland and passed through several other states before arriving in Ms. Lattimore's account.  *See id.* 347:2-352:18 (Lopez).  A jury reasonably could find based on this evidence that the SSI payments, which were the object of the alleged scheme, actually were made by interstate wire communication.

The defense argues that the Government failed to establish that the SSI payments were made "for the purpose of executing" Ms. Lattimore's alleged scheme to defraud.  The quoted language is not drawn from the jury instruction, but from the wire fraud statute itself, which provides in relevant part as follows:  "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, *transmits or causes to be transmitted by means of wire*, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds *for the purpose of executing such scheme or artifice*, shall be fined under this title or imprisoned not more than 20 years, or both."  18 U.S.C. § 1343 (emphasis added).

As discussed above, the Government presented evidence sufficient to establish that Ms. Lattimore engaged in a scheme to defraud with the purpose of obtaining the SSI benefits that were wired into her Wells Fargo bank account.  Ms. Lattimore argues that the Government had to go further, and establish that Ms. Lattimore would have become ineligible for SSI had she been truthful in her disclosures to the SSA.  The defense argues that, at most, the Government's witnesses testified that disclosure of Ms. Lattimore's Bay Federal Credit Union account and actual rent would have triggered further inquiry into Ms. Lattimore's eligibility.  *See* Trial Tr. 44:22-24, 49:16-20 (Fung).  Ms. Lattimore argues that she still might have been entitled to receive the SSI

10

payments had she been truthful, and in that circumstance the transmission of the SSI payments would not have been "for the purpose of executing" a scheme to defraud because the SSI payments would have been legally required.

Ms. Lattimore relies on *Parr v. United States*, 363 U.S. 370 (1960), to support her argument that the Government had to prove she would not have been eligible for SSI benefits had she been truthful about her resources.  In *Parr*, school district officials and others were charged with mail fraud and conspiracy to commit mail fraud under the theory that they intended to misappropriate taxes assessed and collected by the district, and they used the mails to transmit the tax bills and related documents.  The Government argued that the mailings, even if innocent in themselves, were a step in the scheme to defraud the school district.  The Supreme Court rejected that argument, observing that "the School Board was under an express constitutional mandate to levy and collect taxes for the acquisition of facilities for, and to maintain and operate the schools of the District . . . and was required by statute to issue statements for such taxes and to deliver receipts upon payment."  *Id*. at 387.  The Supreme Court also observed that "the Board, to collect the District's taxes (largely from nonresident property owners), was required by the state law to use the mails."  *Id*. at 388.  Under those circumstances, the Supreme Court determined that the mailings could not properly "be said to have been for the purpose of executing a scheme to defraud" merely "because those legally compelled to cause and causing those mailings planned to steal an indefinite part of the receipts."  *See id.* at 389.  The Supreme Court emphasized that the defendants were not alleged to have assessed taxes in excess of the school district's needs in order to provide a fund for misappropriation, and that there was no allegation or evidence that the taxes assessed through the mailings were excessive or in any way illegal.  *See id*. at 387.

The circumstances of the present case are entirely different from those in *Parr*.  In *Parr*, the defendants were legally required to mail the tax bills and related documents, and the amount of taxes to be collected was not at issue.  In other words, the mailings would have occurred and the same amount of taxes would have been collected, whether or not the defendants schemed to misappropriate the tax proceeds at a later date.  Here, the Government presented evidence that the SSI payments were wired into Ms. Lattimore's bank account *because* of the representations she

made to the SSA.  Unlike the mailings in *Parr*, which would have been transmitted regardless of the existence of the alleged scheme to defraud, the SSI payments would not have been transmitted had Ms. Lattimore not provided information about her assets and living situation, and the information she provided was fraudulent.

The Ninth Circuit has found *Parr* to be inapplicable "where the fraudulent scheme triggered the mailings, which would not have occurred except as a step in the scheme." *United States v. Mitchell*, 744 F.2d 701, 704 (9th Cir. 1984).  The particular wire transfers at issue would not have occurred but for Ms. Lattimore's statements to SSA representatives during her redetermination hearings, and the evidence showed those statements were fraudulent.  That Ms. Lattimore theoretically might have been entitled to the same monthly SSI payments even had she been truthful does not alter the Court's conclusion.  Ms. Lattimore was *not* truthful and she obtained the SSA payments in question through her misrepresentations.

Even if the Court were persuaded (and it is not) that the fourth element of the wire fraud offense requires evidence that Ms. Lattimore would have been ineligible for SSI benefits had she been truthful, the Government presented such evidence.  At the hearing on the post-trial motions, Government counsel and defense counsel jointly reviewed Ms. Lattimore's bank statements that were introduced at trial as Exhibit 4 (Wells Fargo statements) and Exhibit 9 (Bay Federal Credit Union statements).  Counsel agreed that the bank statements showed that Ms. Lattimore had more than $2,000 in those accounts on the last day of the months in which she received the charged wire transfers.  Ms. Fung testified at trial that individuals are eligible for SSI only if they show that they have less than $2,000 in assets in a given month, and that assets are measured on the last day of the month.  *See* Trial Tr. 32:2-23, 62:8-22 (Fung).  This evidence, viewed in the light most favorable to the Government, is adequate to allow a rational trier of fact to find that Ms. Lattimore would have been found ineligible for SSI had had she truthfully disclosed her assets.

Ms. Fung also testified that an individual becomes ineligible for SSI, and will stop receiving SSI payments, if the individual's wages exceed the SSI payments.  *See* Trial Tr. 35:19-36:1 (Fung).  At the hearing on the post-trial motions, counsel jointly examined Exhibit 9 (Ms. Lattimore's Bay Federal Credit Union statements) and agreed that the undisclosed wages Ms.

Lattimore received from IHSS exceeded her SSI payments during the months in which she received the charged wire transfers.  Exhibit 9 shows that Ms. Lattimore receive the following direct deposits from IHSS:  in March 2017, a deposit of $1,649.90 and a deposit of $1,678.91; in May 2017, a deposit of $1,616.75 and a deposit of $1,629.19; and in June 2017, a deposit of $1,596.04 and a deposit of $1,649.90.  Those payments greatly exceeded Ms. Lattimore's monthly SSI payments, which were $895.72 for the months March 2017, May 2017, and June 2017.  *See* Trial Tr. 274:15-276:24 (Chevalier).  Ms. Lattimore received approximately $160,000 in IHSS payments from May 2012 through September 2018.  *See id.* 258:3-269:17 (Chevalier).  This evidence, viewed in the light most favorable to the Government, is adequate to allow a rational trier of fact to find that Ms. Lattimore would have been found ineligible for SSI had had she disclosed the IHSS payments she received in her Bay Federal Credit Union account.

Ms. Lattimore's pro se motion raises other issues with respect to the wire fraud counts, asserting that the Government did not produce certain evidence, such as canceled check stubs showing the deposits of IHSS funds in her account, testimony of a witness who actually saw her steal Ms. Henry's IHSS money, and proof that she (Ms. Lattimore) completed the IHSS direct deposit form.  The Government was not required to present any particular evidence and, as discussed above, the Government presented sufficient evidence on each element of the wire fraud offenses.

Ms. Lattimore's motion for judgment of acquittal is DENIED as to Counts 1-3.

### 2.    Mail Fraud (Counts 4-6)

Ms. Lattimore was charged with three counts of mail fraud based on her mailing of IHSS timesheets on March 31, 2017, April 30, 2017, and May 31, 2017.  The jury was instructed that the Government had to prove four elements to establish Ms. Lattimore's guilt on each count of mail fraud under 18 U.S.C. § 1341:  (1) "First, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.  Deceitful statements of half-truths may constitute false or fraudulent representations"; (2) "Second, the statements made as part of the scheme were material; that is, they had a natural tendency to

influence, or were capable of influencing, a person to part with money or property"; (3) "Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat, meaning the intent to deprive someone of money or property by means of deception"; and (4) "Fourth, the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme."  Jury Instr. 38.

On the first element, scheme to defraud, the Government presented evidence that Ms. Lattimore caused approximately $160,000 in IHSS payments meant for her care provider, Ms. Henry, to be deposited into her own (Ms. Lattimore's) bank account between May 2012 and September 2018.  *See* Trial Tr. 258:3-269:17 (Chevalier).   During much of that period, Ms. Lattimore was submitting timesheets for the maximum amount of hours allowed – 283 hours per month, which was approximately 70 per week.  *See id.* 159:1-161:14 (Ballantyne).  Ms. Lattimore justified those hours by submitting forged medical records to IHSS showing that she had more medical appointments than she actually did.  *See id.* 162:13-169:11 (Ballantyne); 309:15-21 (Williams-Neal); 329:4-9 (Manchester); 341:11-21 (Myers).  Ms. Lattimore made it difficult for IHSS to verify those appointments because she refused to sign a release of information form, which was unusual.  *See id.* 161:25-162:8 (Ballantyne).  The Government presented evidence that Ms. Henry could not actually have provided all the IHSS hours claimed, because during the period she was supposedly working 70 per week providing care to Ms. Lattimore, she also was working full-time for other employers.  *See id.* 279:18-293:23 (Chevalier).  The evidence showed that Ms. Henry would have had to work 20 or 21 hours per day, and on one occasion would have had to work 26 hours per day, an impossibility.  *See id.*  This evidence, viewed in the light most favorable to the Government, is adequate to allow a rational trier of fact to find that Ms. Lattimore devised and participated in a scheme to defraud the IHSS program of thousands of dollars.

On the second element, materiality of the misrepresentations, the Government presented evidence that the IHSS payments depended on the number of hours authorized, and on the timesheets certifying the number of hours worked by the care provider.  *See* Trial Tr. 138:12-142:13.  This evidence, viewed in the light most favorable to the Government, is adequate to allow a rational trier of fact to find that Ms. Lattimore's misrepresentations to IHSS regarding the

1    number of medical appointments she had and the number of care provider hours worked by Ms.

2    Henry were material.

3         On the third element, intent to defraud, as discussed above the Government submitted

4    evidence that Ms. Lattimore submitted fraudulent medical records to support her request for the

5    maximum number of care provider hours allowed, submitted fraudulent timesheets, and caused the

6    IHSS payments meant for Ms. Henry to be deposited in her own account, all over a period of

7    years.  This evidence, viewed in the light most favorable to the Government, is adequate to allow a

8    rational trier of fact to find that Ms. Lattimore intended to defraud the IHSS program.

9         On the fourth element, use of the mails to carry out or attempt to carry out an essential part

10   of the scheme, the Government presented evidence that the procedure for obtaining the IHSS

11   payments for care provider hours was for the recipient to mail the timesheets to Chico, California.

12   *See* Trial Tr. 142:4-10 (Ballantyne).  Ms. Lattimore received numerous IHSS payments.  *See id.*

13   265:17-269:14 (Chevalier).  This evidence, viewed in the light most favorable to the Government,

14   is adequate to allow a rational trier of fact to find that Ms. Lattimore used the mails to submit the

15   timesheets to the IHSS facility in Chico, California.

16        Ms. Lattimore's pro se motion asserts that the Government did not use a handwriting

17   expert or other evidence to show that Ms. Henry did not sign the IHSS timesheets.  The

18   Government did not have to prove who signed the timesheets in order to show that they were

19   mailed to the IHSS facility in Chico, California as part of a scheme to defraud.

20        Ms. Lattimore's motion for judgment of acquittal is DENIED as to Counts 4-6.

21        **3.    SSI Fraud (Counts 7-8)**

22        Ms. Lattimore was charged with two counts of SSI fraud based on representations she

23   made regarding her income, resources, and rent during redetermination interviews with the SSA in

24   January 2016 and December 2016.  The jury was instructed that the Government had to prove two

25   elements to establish Ms. Lattimore's guilt on each count of SSI fraud under 42 U.S.C. §

26   1383a(a)(2):  (1) " First, the defendant knowingly and willfully made or caused to be made a false

27   statement or representation of a material fact"; and (2) Second, the statement was made for use in

28   determining rights to any Supplemental Security Income benefit."  Jury Instr. 42.

United States District Court
Northern District of California

United States District Court
Northern District of California

On the first element, the Government presented evidence that Ms. Lattimore lied to Ms. Fung and Ms. Gabriel of the SSA during her redetermination interviews in January 2016 and December 2016. Specifically, Ms. Lattimore stated that her rent was $600, she did not get any help with paying rent, she did not have any resources other than her Wells Fargo bank accounts, and she did not have any other type of income. *See* Trial Tr. 43:20-49:8 (Fung); 195:21-199:1 (Gabriel). As discussed above, those statements were not true, because Ms. Lattimore was paying more than $1,000 per month in rent and receiving thousands of dollars in IHSS payments in her undisclosed Bay Federal Credit Union account. This evidence, viewed in the light most favorable to the Government, is adequate to allow a rational trier of fact to find that Ms. Lattimore knowingly made false statements of material fact to the SSA.

On the second element, that the statement was made for use in determining eligibility for SSI benefits, the Government presented evidence that Ms. Lattimore's statements were used to determine her eligibility for SSI payments and the amount of payments. *See* Trial Tr. 34:5-36:4 (Fung). This evidence, viewed in the light most favorable to the Government, is adequate to allow a rational trier of fact to find that the second element is met.

Ms. Lattimore's pro se motion argues that the Government did not prove that her rent was more than $2,000 per month. The Government did not have to prove that fact in order to prove the two elements of SSI fraud.

Ms. Lattimore's motion for judgment of acquittal is DENIED as to Counts 7-8.

## III.   MOTION FOR NEW TRIAL

### A.     Legal Standard

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "[A] district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (internal quotation marks and citation omitted). "The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *Id*. "A new trial is only warranted on the basis of an incorrect evidentiary ruling if the ruling

substantially prejudiced a party." *United States v. 99.66 Acres of Land*, 970 F.2d 651, 658 (9th Cir. 1992).  A motion for new trial will be granted only "in exceptional circumstances in which the evidence weighs heavily against the verdict." *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012).

### B.      Discussion

Ms. Lattimore contends that she is entitled to a new trial based on five asserted evidentiary errors:  (1) the exclusion of Ms. Henry's testimony regarding her own observations of Ms. Lattimore's disabilities; (2) the admission of Ms. Henry's prior convictions for impeachment; (3) the admission of Ms. Lattimore's prior convictions; (4) the admission of evidence that Ms. Lattimore lied on her rental application; and (5) the Government's repeated references to Ms. Lattimore's "greed."  For the reasons discussed below, the Court finds that Ms. Lattimore has failed to establish that the Court erred in its evidentiary rulings, and has failed to show substantial prejudice flowing from the evidentiary rulings.

### 1.      Ms. Henry's Testimony

The defense contends that the Court erred in excluding Ms. Henry's testimony regarding her own observations of Ms. Lattimore's disabilities.  The defense cites to a colloquy between the Court and Ms. Lattimore, outside the presence of the jury, regarding the permissible scope of Ms. Henry's testimony in light of Ms. Henry's assertion of her Fifth Amendment not to testify with respect to a number of topics.  The Court observed that Ms. Henry's assertion of the Fifth Amendment left few areas for questioning, and stated that Ms. Henry could testify about Ms. Lattimore's disabilities but that in the Court's view such testimony would not be relevant to the issues in the case because the case was not about whether Ms. Lattimore was disabled.  *See* Trial Tr. 455:5-23.  Ms. Lattimore indicated that she wanted to rebut Ms. Ballantyne's testimony that suggested Ms. Lattimore was malingering.  *See id*.  The Court stated that it needed to be careful of Ms. Henry's Fifth Amendment rights and directed Ms. Henry's counsel, Mr. Leeming, to assert objections as necessary to protect Ms. Henry.  *See id*. 455:22-25.

The defense argues that the Government put the authenticity of Ms. Lattimore's disabilities into question through the testimony of Ms. Ballantyne, and that Ms. Lattimore should have been

permitted to offer rebuttal evidence.  In fact, Ms. Lattimore was given the opportunity to do so. While the Court sustained several objections from Mr. Leeming that related to Ms. Henry's assertion of her Fifth Amendment rights, and sustained several hearsay objections from the Government, *see* Trial Tr. 460:2-462:2, the Court allowed Ms. Henry to testify regarding Ms. Lattimore's inability to drive due to her medical conditions, overruling an objection from the Government, *see id*. 462:10-25.  Ms. Henry also testified without objection regarding Ms. Lattimore's encounter with Ms. Ballantyne at Wal-Mart, which gave rise to the suggestion of malingering.  *See id*. 463:10-22.  The Court allowed Ms. Henry to testify that, because of her medical conditions, Ms. Lattimore could not type and needed assistance from Ms. Henry in typing a particular letter.  *See id*. 465:16-466:25.  Based on this record, the Court finds no merit to the defense argument that Ms. Henry's testimony was improperly excluded.

## 2.    Ms. Henry's Prior Convictions

Ms. Lattimore argues that the Court erred in admitting Ms. Henry's prior convictions for welfare fraud and perjury as impeachment evidence, asserting that those convictions should have been excluded under Federal Rule of Evidence 609(c)(1), which provides that evidence of a conviction is not admissible if "the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding that the person has been rehabilitated, and the person has not been convicted of a later crime punishable by death or by imprisonment for more than one year." Fed. R. Evid. 609(c)(1).  Ms. Lattimore asserts that Ms. Henry's convictions were expunged under California Penal Code § 1203.4, and that expungement qualifies as an "other equivalent procedure" under Rule 609(c)(1).

The use of Ms. Henry's prior convictions for impeachment was the subject of the Government's Motion in Limine No. 6, and the Court rejected Ms. Lattimore's Rule 609(c)(1) argument when ruling on that motion.  *See* Order Re Parties' Motions in Limine, ECF 178.  In making that ruling, the Court held as follows:

> Lattimore has not cited any case holding that expungement of a conviction under
> California Penal Code §§ 1203.4 and 1203.4a qualifies as an "other equivalent
> procedure" within the meaning of Rule 609(c)(1). The expungement of Henry's
> conviction did not eliminate all consequences of it, as Henry is required to disclose
> the conviction in applications for public office or licensure, and if she is prosecuted

United States District Court
Northern District of California

1

2

> for any future offense, the conviction will have the same effect as if probation had not been granted and the case had not been dismissed. *See* Gov't's Ex. 2, ECF 138-1. Under these circumstances, the Court declines to find that Henry's conviction falls within Rule 609(c)(1).

3   Order Re Parties' Motions in Limine at 10-11.

4         The Government questioned Ms. Henry briefly about her prior convictions during cross-

5   examination, without objection by Ms. Lattimore.  *See* Trial Tr. 471:8-473:13.

6         The defense now seeks to revisit the Court's ruling, citing for the first time the case

7   *People v. Mackey*, 58 Cal. App. 123 (1922), in which the state appellate court held that "the

8   Legislature intended by the enactment of section 1203 that no convicted person discharged after

9   probation thenceforth should be regarded as one possessed of the degree of turpitude likely to

10   affect his credibility as a witness."  The defense also argues that is position is supported by the fact

11   that California law does not permit an expunged conviction to be used for impeachment.  *See* Cal.

12   Evid. Code § 788.

13         The Court normally would not reconsider its evidentiary ruling at this late stage, after the

14   jury has rendered its verdict, based on authorities presented to the Court for the first time in a post-

15   trial motion.  Ms. Lattimore cites *Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013), for

16   the proposition that the Court has a duty to properly apply governing law even where the parties

17   previously failed to identify and brief it.  *Thompson* neither uses the word "duty" nor requires a

18   court to apply law that the parties failed to identify.  *Thompson* holds that "[o]nce an issue or

19   claim is properly before the court, the court is not limited to the particular legal theories advanced

20   by the parties," but rather "retains the independent power to identify and apply the proper

21   construction of governing law."  *Id.* (internal quotation marks and citations omitted).  That holding

22   was issued in the context of an appeal in a habeas case, and thus did not involve a request to

23   invalidate a jury's verdict based on legal authorities presented to the Court for the first time after

24   trial.

25         However, Ms. Lattimore now presents persuasive authority to support her position that

26   admission of Ms. Henry's prior convictions was error.  If this Court were to find such error, then

27   the Court would also have to determine whether that error would entitle Ms. Lattimore to a new

28   trial.  An incorrect evidentiary ruling warrants a new trial only if the ruling substantially

United States District Court
Northern District of California

19

prejudiced a party.  *See 99.66 Acres of Land*, 970 F.2d at 658.  Ms. Lattimore argues that the ruling was prejudicial to her case, because the prior convictions diminished the credibility of Ms. Henry, who was one of only two witnesses presented by the defense.

As discussed above, Ms. Henry could be questioned about only very limited topics in light of her assertion of the Fifth Amendment.  Her direct examination took 12 minutes, her cross-examination took 4 minutes, and her redirect examination took 4 minutes.  Ms. Henry's admissible testimony related to Ms. Lattimore's disabilities, which were established by Dr. Swan's testimony and uncontested by the Government.  At best, Ms. Henry's evidence offered only minimal support for the defense case.  Thus, it is not clear that any diminishment in Ms. Henry's credibility caused by admission of her prior convictions was prejudicial to the defense.  Moreover, the Government pointed the jury to other evidence in the record that undermined Ms. Henry's credibility, including the fact that she was Ms. Lattimore's sister and that she could not have worked all the IHSS hours claimed.  *See* Trial Tr. 560:4-23.

Given the limited scope of Ms. Henry's testimony focusing on Ms. Lattimore's disabilities, which were not material to any element of the charged offenses and which were acknowledged by the Government in any event, the Court concludes that any possible prejudice to the defense flowing from admission of Ms. Henry's prior convictions was not "substantial" as required for a new trial.

### 3.  Ms. Lattimore's Prior Convictions

Next, the defense argues that the Court erred in admitting Ms. Lattimore's prior convictions for welfare fraud and perjury.  Admission of those convictions was the subject of the Government's Motion in Limine No. 1.  *See* Order Re Parties' Motions in Limine.  Under Federal Rule of Evidence 404(b), the Government sought to admit evidence of Lattimore's prior criminal convictions on nine counts in 1999, her prior criminal conviction on one count in 2001, and her alleged act of forging a letter from a government official.  *See id*. at 2.  The Court admitted the convictions on two of the nine counts in 1999, for welfare fraud and perjury, reasoning that those convictions were highly probative of material elements of the charged offenses, including knowledge and intent, and involved very similar conduct.  *See id*. at 4.  The Court also found that

"[a] reasonable jury could find that any notion that Lattimore's misreporting to the Social Security Administration in this case was due to mistake or ignorance may be undermined by her convictions arising from misreporting to a state welfare agency, which informed her of the importance of compliance with reporting requirements." *Id*. at 3.  The Court expressly rejected Ms. Lattimore's argument that her prior convictions were offered solely as propensity evidence. *See id*. at 4.  The Court denied the Government's request to admit the convictions on the other counts in 1999, the count in 2001, and the alleged act of forging a letter from a government official.  *See id*. at 2-7.

Ms. Lattimore argues that the Government improperly used her prior convictions at trial to show propensity rather than intent.  The Court finds this argument to be unpersuasive. Immediately before the prior convictions were introduced, the Court instructed the jury as follows: "This evidence of other acts may be admitted only for a limited purpose.  You may consider this evidence only for the purpose of deciding whether the defendant had the state of mind, knowledge, or intent necessary to commit the crime charged in the Indictment, or did not commit the acts for which the defendant is on trial by accident or mistake.  Do not consider this evidence for any other purpose." Trial Tr. 232:1-7.  The Court gave the same instruction prior to deliberations.  *See* Trial Tr. 501:22-502:3.  The defense asserts that the Government used the prior convictions to show propensity in its closing argument, quoting Government counsel as asking, "[h]ow do you know that Ms. Lattimore had the intent to defraud here," and then answering, "[f]irst, you know that Ms. Lattimore was previously convicted of welfare fraud and perjury."  Trial Tr. 520:1-25.  The defense omits the remainder of Government counsel's sentence, which continued, "and Judge Freeman instructed you that you can only consider these convictions for whether Ms. Lattimore had the knowledge and intent to commit these acts and whether she committed these acts by lack of accident or lack of mistake."  *Id*.  Government counsel then stated, "So you should not consider these convictions for any other reason."  *Id*.  The Court finds that the Government did not attempt to use Ms. Lattimore's prior convictions for an improper purpose, and also finds that the jury was properly instructed on the permissible use of the prior convictions.  "[J]uries are presumed to follow their instructions."  *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

United States District Court
Northern District of California

1

#### 4.      Ms. Lattimore's Lies on her Rental Application

2      The defense asserts that it was error for the Court to admit evidence that Ms. Lattimore lied

3      about her income on her apartment rental application, representing that she earned $10,000 per

4      month.  Admission of that evidence was the subject of the Government's Motion in Limine No. 2.

5      *See* Order Re Parties' Motions in Limine at 7-8.  The Court admitted the evidence as "inextricably

6      intertwined" with the charged offenses.  *See id.*

7      Evidence of "other acts" may be admissible without meeting the requirements of Rule

8      404(b) where the evidence is "inextricably intertwined" with the charged offense.  *United States v.*

9      *Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). The Ninth Circuit has allowed evidence to

10     be admitted under this exception to Rule 404(b) when "it constitutes a part of the transaction that

11     serves as the basis for the criminal charge," or when it is "necessary to do so in order to permit the

12     prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."

13     *Id.* at 1012-13.  The Government's theory was that the object of Ms. Lattimore's scheme was to

14     defraud the SSI and IHSS programs of money so that she could have a better lifestyle and live in a

15     nicer apartment.  The Court determined that the lie regarding Ms. Lattimore's income on her rental

16     application was part and parcel of the alleged scheme to defraud and necessary to permit the

17     Government to offer a coherent and comprehensible story regarding that scheme.  *See* Order Re

18     Parties' Motions in Limine at 7-8.

19     Ms. Lattimore simply reargues the motion in limine, asserting that the lie on the apartment

20     application was not inextricably intertwined with the charged offenses.  Ms. Lattimore provides no

21     basis for the Court to reconsider its prior ruling and the Court declines to do so.

22

#### 5.      The Government's References to Ms. Lattimore's "Greed"

23     Finally, Ms. Lattimore argues that the Government's references to her "greed" were

24     improper under Rule 404(a), which provides in relevant part that "[e]vidence of a person's

25     character or character trait is not admissible to prove that on a particular occasion the person acted

26     in accordance with the character or trait."  Fed. R. Evid. 404(a)(1).  The defense characterizes the

27     Government's comments regarding Ms. Lattimore's "greed" as an attempt to show that she had

28     the character trait of greediness and acted in conformity with that character trait.

United States District Court
Northern District of California

This argument borders on the absurd.  As an initial matter, the Court does not recall Ms. Lattimore objecting to the Government's use of the term "greed" and she does not assert that she did object.  Moreover, having reviewed the trial transcript, the Court is satisfied that the Government offered evidence of Ms. Lattimore's "greed" as an explanation of her motive and intent to defraud the SSI and IHSS programs, which was entirely proper.  *See United States v. Weygandt*, 681 F. App'x 630, 633 (9th Cir. 2017) (finding no clear error where the Government made references to the defendant's wealth and greed to show motive and intent).  The Government never argued that Ms. Lattimore had a "greedy" character or character trait; in fact, the defense was the only side to use the term "greedy."  Nor did the Government suggest that Ms. Lattimore was guilty because she was acting in accordance with such character or character trait.

### 6.    Conclusion

In summary, the Court finds that there is no merit whatsoever to four of the five assertions of evidentiary error advanced by Ms. Lattimore.  On the fifth asserted evidentiary error, admission of Ms. Henry's prior convictions, Ms. Lattimore has presented new legal authorities suggesting that the Court may well have erred.  However, it is clear that any such error did not substantially prejudice Ms. Lattimore in putting on her defense.

A new trial is warranted "[i]f the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *Kellington*, 217 F.3d at 1097 (9th Cir. 2000) (citations omitted).  In the present case, the evidence of Ms. Lattimore's guilt was more than sufficient – it was overwhelming.  On this record, it is clear that no miscarriage of justice occurred.  Accordingly, the Court concludes that this is not one of those extraordinary cases in which a new trial is warranted.

Ms. Lattimore's motion for new trial is DENIED.

//

//

//

//

23

**IV.   ORDER**

(1)   Ms. Lattimore's motion for judgment of acquittal is DENIED.

(2)   Ms. Lattimore's motion for new trial is DENIED.

(3)   This order terminates ECF 250 and 259.

Dated:  September 5, 2023

BETH LABSON FREEMAN
United States District Judge